IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOSEPH MURPHY, | ) Case No. 3:96 CV 7244 |
| Petitioner, | ) |
| v. | ) <u>MEMORANDUM OF OPINION</u> |
| STATE OF OHIO, | ) |
| Respondent. | ) |

KATZ, J.

This matter comes before the Court on Petitioner, Joseph Murphy's ("Murphy"), amended petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. On March 5, 2003, the Court granted Murphy's motion to hold this case in abeyance pending the state court adjudication of a mental retardation claim pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002). (Doc. No. 154.) Murphy notified the Court after he had fully exhausted his *Atkins* claim in state court and thereafter filed an amended petition seeking relief from his sentence of death by asserting that he was mentally retarded. (Doc. No. 165.) The Respondent filed an amended return of writ on January 10, 2005, (Doc. No. 167), to which Murphy filed an amended traverse. (Doc. No. 174.) For the following reasons, Murphy's amended petition for a writ of habeas corpus will be denied.

**I. Procedural History**

Murphy filed his initial petition for a writ of habeas corpus on December 31, 1996. (Doc. No.

1

20.) After briefing by the parties, the Court denied Murphy's petition. (Doc. No. 130.) Murphy appealed the Court's decision to the Sixth Circuit Court of Appeals. That court remanded the case, requesting that this Court provide a detailed certificate of appealability ("COA") analysis as to each claim Murphy raised in the petition. (Doc. No. 142.) On December 5, 2001, the Court issued an order analyzing each claim, setting forth its reasoning for granting or denying a COA. (Doc. No. 147.) In that Order, the Court reserved ruling on whether it would grant a COA for Murphy's mental retardation claim because the Respondent had not yet had the opportunity to respond to it.[1]

On June 20, 2002, the United States Supreme Court issued its opinion in *Atkins v. Virginia*, 536 U.S. 304 (2002), holding that it was unconstitutional to execute the mentally retarded. Murphy thereafter filed a motion to hold his federal habeas litigation in abeyance so that he could return to state court and fully exhaust his mental retardation claim pursuant to *Atkins*. (Doc. No. 152.) On March 5, 2003, the Court granted Murphy's motion to stay the case and hold it in abeyance pending his return to state court. (Doc. No. 154.) The Court also ordered Murphy to notify it once the state court proceedings concluded. On October 26, 2005, Murphy notified the Court that the United States Supreme Court had denied his petition for a writ of certiorari on his mental retardation claim, exhausting that claim thereby. (Doc. No. 161.) As stated above, the parties then submitted their amended briefs regarding Murphy's mental retardation claim.

## II. Applicable Law

---

[1] In its December 5, 2001 Order, the Court observed that Murphy first raised his mental retardation claim in the traverse. Although the Sixth Circuit has since held that a district court is well within its discretion to decline to review such a claim, *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005), the Court will not at this time apply the *Tyler* holding retrospectively.

2

Murphy raised his mental retardation claim pursuant to the United States Supreme Court decision in *Atkins v. Virginia*, 536 U.S. 304 (2002). In that case, the Court held that the Eighth Amendment's prohibition against "cruel and unusual punishment" proscribes the execution of the mentally retarded. Drawing its definition of this clause from "evolving standards of decency," the *Atkins* Court reviewed several state's legislative prohibitions against executing the mentally retarded, observing that the practice of executing them had "become truly unusual." *Id.* at 316. Thus, the Court concluded that because there appeared to be a national consensus prohibiting the execution of the mentally retarded, the Eighth Amendment's ban on cruel and unusual punishment forbids such a practice. Rather than define what constitutes "mental retardation," the *Atkins* Court left "'to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.'" *Id.* at 317 (quoting *Ford v. Wainwright*, 477 U.S. 399 (1986)).

In the wake of the *Atkins* decision, the Ohio Supreme Court in *State v. Lott*, 779 N.E.2d 1011 (Ohio 2002), pronounced Ohio's definition of what constituted a mentally retarded individual for purposes of execution ineligibility. Mirroring the definitions of mental retardation of the American Association of Mental Retardation and the American Psychiatric Association, the Ohio Supreme Court found that an individual is mentally retarded, and therefore ineligible to be executed, if he or she has: "(1) significantly subaverage intellectual functioning (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." *Id.* at 1014. Although it acknowledged that I.Q. tests are not the sole determining factor for a mental retardation finding, the Ohio Supreme Court held that "there is a rebuttable presumption that a defendant is not mentally retarded if his or her I.Q. is above 70." *Id.*

Because a finding of mental retardation typically is a disputed factual issue, the *Lott* court opined

3

that it was best resolved in the trial courts, where the parties could adduce evidence regarding a petitioner's mental status. It further held that the trial courts should conduct a *de novo* review of the evidence, making findings by "rely[ing] on professional evaluations of [a petitioner]'s mental status, and consider[ing] expert testimony, [and] appointing experts if necessary." *Id.* at 1015. The *Lott* court also held that the petitioner must prove his or her mental retardation by a preponderance of the evidence standard. "Thus, one who challenges the presumption of sanity or competence must bear the burden of proof to challenge that presumption." *Id.* at 1016 (citations omitted).

Before proceeding to a review of Murphy's mental retardation claim, the Court must decide what standard of review to apply. Pursuant to 28 U.S.C. § 2254(d), a habeas court shall not grant a writ of habeas corpus unless the claim–

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Thus, the Court must first decide whether the standard set forth in § 2254(d)(1) or (d)(2) applies to Murphy's *Atkins* claim. This decision necessarily turns on whether the Court determines the State court's finding that Murphy was not mentally retarded to be a mixed question of law and fact, or a purely factual issue.

It appears this issue is one of first impression in this Circuit. Based on the findings of another circuit court, and the application of prior Sixth Circuit holdings to this context, the Court finds that the § 2254(d)(2) governs the disposition of Murphy's claim. While the Sixth Circuit has yet to adjudicate whether a State court finding regarding a habeas petitioner's mental retardation is a question of pure fact

4

under § 2254(d)(2), that Court has held that the issue of whether a petitioner is competent to stand trial is a factual question. In *Mackey v. Dutton*, 217 F.3d 399, 413 (6th Cir. 2000), the Sixth Circuit, contrary to its prior findings, held "§ 2254(d)'s presumption of correctness applies to a trial court's competency determination." *Id.* Although the *Mackey* court noted it previously had held in *Cremeans v. Chapleau*, 62 F.3d 167 (6th Cir. 1995), competency determinations are mixed questions of law and fact, the subsequent United States Supreme Court holding in *Thompson v. Keohane*, 516 U.S. 99, 111 (1995), superceded the *Cremeans* holding. *Id.*

The *Mackey* court adopted the *Thompson* Court's reasoning in finding that a competency claim was purely a factual issue. It quoted the Supreme Court's reasoning, as follows:

> In several cases, the Court has classified "factual issues" within § 2254(d)'s compass questions extending beyond the determination of "what happened." This category notably includes: competency to stand trial; and juror impartiality. While these issues encompass more than "basic, primary, or historical facts," their resolution depends heavily on the trial court's appraisal of witness credibility and demeanor. This Court has reasoned that a trial court is better positioned to make decisions of this genre, and has therefore accorded the judgment of the jurist-observer "presumptive weight."

*Mackey*, 217 F.3d at 413 (quoting *Thompson*, 516 U.S. at 111).

Although *Mackey* was admittedly a pre-Anti Terrorism and Effective Death Penalty Act case, the Court finds the *Mackey* and *Thompson* court's reasoning persuasive and applicable to State court findings of mental retardation. Similar to a competency determination, a State trial court enjoys an incomparable vantage point in assessing the witnesses' and the petitioner's demeanor. Thus, the Court finds that the *Mackey* and *Thompson* holdings, which afford a State court finding regarding a petitioner's competency to stand trial a presumption of correctness, also applies to a State court's finding regarding a petitioner's mental retardation.

In so finding, this Court follows the Fifth Circuit. In *Clark v. Quarterman*, 457 F.3d 441, 444

5

(5th Cir. 2006), the Fifth Circuit, presented with the identical issues this Court now encounters, held that "the question of whether [a habeas petitioner] suffers from significantly subaverage intellectual functioning is a question of fact, and not a mixed question of law and fact . . . ." *Id.* Thus, to prevail on his *Atkins* claim, Murphy must demonstrate that the State court determination that he is not mentally retarded "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).[2]

### III. Discussion

Pursuant to the holding in *State v. Lott*, 779 N.E.2d 1011 (Ohio 2002), discussed *supra*, the Marion County Court of Common Pleas held a hearing regarding Murphy's mental retardation status. At the hearing, Murphy adduced the testimony of Dr. Caroline Everington. Dr. Everington testified that a number of Murphy's I.Q. scores that were above the 70-75 range were incorrect. She stated that one of them was possibly the result of the "Flynn Effect," a phenomenon in which test results at the end of a testing period are higher than those at the beginning of a testing period. (Doc. No. 169, at 37.) She described two other tests in which Murphy received scores of 54 and 83 as "outlier" tests, or tests in which the scores did not appear to be consistent with Murphy's I.Q. score history. Dr. Everington also testified that "it's really difficult to say with absolute certainty that [Murphy's] intellectual functioning has

---

[2] A plain reading of § 2254(d) also suggests that the review of Murphy's *Atkins* claims should fall under the purview of Section (d)(2). If the Court were to utilize Section (d)(1), it would not grant Murphy's application unless the State court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

In deciding Murphy's claim, however, the State courts did not apply *any* United States Supreme Court precedent because *Atkins* itself directs the States to create their own standards by which to determine if a petitioner is mentally retarded. Thus, complying with the dictates of Section (d)(1) would be impracticable.

consistently been in the mental retardation range because of the variation of those scores." *Id.* at 74. Ultimately, Dr. Everington concluded that "it is more likely that [Murphy] meets the classification for mental retardation than not." *Id.* at 137. She also found that Murphy's adaptive skills were impaired and that the onset of Murphy's mental impairments began before age 18.

The State presented the testimony of Dr. James Sunbury, who had examined Murphy for competency prior to trial. Dr. Sunbury previously had diagnosed Murphy with borderline intellectual functioning. *Id.* at 148. Dr. Sunbury discounted an I.Q. test in which Murphy scored a 66 because Murphy later indicated that he was "just having some fun" with Dr. Sunbury when he took the tests on that day. *Id.* at 158. Dr. Sunbury also found that Murphy's other psychological disorders, such as conduct disorder (which, in an adult, would be diagnosed as an antisocial personality disorder), affected his adaptive abilities. *Id.* at 160-61. Dr. Sunbury concluded that Murphy was not mentally retarded.

In its judgment entry finding that Murphy was not mentally retarded, the trial court held that Murphy did not meet the three-pronged test enunciated in *Lott* as set forth above. Specifically, the trial court held that Murphy did not meet the first prong, *i.e.*, that he possessed significantly subaverage intellectual functioning. *State v. Murphy*, No. 87-CR-0036, slip. op., at 3 (Ohio Ct. Common Pleas June 30, 2004). It further found that it could not determine whether Murphy met the second, adaptive skills prong of the test but held that any mental difficulties Murphy possessed occurred before the age of 18.

On appeal from the trial court's decision, the Third District Court of Appeals adopted the trial court's decision and set forth its factual findings as follows:

> After reviewing the extensive psychological testimony provided by Dr. Everington and Dr. Sunbury, we conclude that the trial court did not abuse its discretion in determining that Murphy was not mentally retarded. First, Murphy was interviewed by at least eight

7

>psychologists since he was a child and no one has ever diagnosed him to be mentally retarded. Second, an extensive review of the record shows that Murphy's IQ scores were consistently above 70. Moreover, even his lowest scores, a 54 in 1979 and a 66 in 1987, were discredited by both expert witnesses. Third, Dr. Everington, the defense expert witness, testified that Murphy was functioning at an approximate IQ of 75, which is within the mental retardation range but above the score of 70 that the Ohio Supreme Court indicated creates a rebuttable presumption that the defendant is not mentally retarded. Fourth, and perhaps most importantly to the issue of subaverage intellectual functioning, Dr. Everington further testified that "it's really difficult to say with absolute certainty that his intellectual functioning has consistently been in the mental retardation range because of the variation of the scores."
>
>In conclusion, therefore, even if this Court were to determine that the second and third prongs of *Lott* were met, we cannot conclude that the trial court's determination that Murphy did not possess significantly subaverage intelligence was unreasonable, arbitrary, or unconscionable. Thus, the assignment of error is overruled, and the determination of the trial court is affirmed.

*State v. Murphy*, No. 9-04-36, 2005 WL 280446, at *5-6 (Ohio Ct. App. Feb. 7, 2005).[3]

The Court cannot find, as it must to grant Murphy relief, that the Ohio courts' factual findings were unreasonable in light of the evidence presented at the State court proceeding. As both courts observed, Murphy's own expert could not conclude that Murphy functions at a significantly subaverage intelligence level. Additionally, Dr. Everington also concluded that Murphy functioned in the 70-75 I.Q. level. (Doc. No. 169, at 74-5.) As the Third District held, this level is above the score of 70 which the *Lott* court held invokes a rebuttable presumption that a petitioner is not mentally retarded.

In his briefs, Murphy asserts that the State court's findings were erroneous in several respects. First, he maintains that the trial court failed to consider the standard error of measurement, or margin of error, for the I.Q. tests Murphy took. He also claims that the State courts ignored the evidence Dr.

---

[3] The Third District Court's opinion represents the last reasoned opinion regarding Murphy's mental retardation. Although Murphy appealed the Third District's decision to the Ohio Supreme Court, that court did not accept Murphy's appeal. for review. *State v. Murphy*, 830 N.E.2d 347 (Ohio 2005).

8

Everington adduced regarding the Flynn effect. Lastly, Murphy contends that the State courts ignored evidence in support of Murphy's mental retardation from Dr. Sunbury's testimony.

These arguments cannot prevail. To address Murphy's assertions would require the Court to review the hearing testimony and to question whether the State court's factual findings were correct. The Court cannot perform this type of review. As it held above, the Court must accept the State courts' factual findings unless it finds that they were unreasonable in light of the evidence presented. The State courts' findings were not unreasonable because they were based on the testimony of both experts at the hearing. While Murphy chooses to emphasize different portions of the experts' testimony in support of his position, this Court is not free to disregard the State courts' factual findings merely because some of the hearing testimony at times supported Murphy's mental retardation claim. Instead, the Court finds that there was ample evidence to support the State courts' findings based on the hearing testimony of Dr. Sunbury, who concluded that Murphy was not mentally retarded, and Dr. Everington, who at various points in the hearing stated that it was difficult to determine whether Murphy had significantly subaverage intelligence.

Murphy next challenges the State court findings by asserting that they inflated his burden of proof. Although the *Lott* court held that a petitioner need only establish mental retardation by a preponderance of evidence, Murphy maintains that the trial court inflated that standard when it held that "Dr. Everington further testified that 'it's really difficult to say with absolute certainty that his intellectual functioning has consistently been in the mental retardation range because of the variation of the scores.'" *State v. Murphy*, 2005 WL at *5. From this sentence, Murphy extrapolates that the Third District Court of Appeals utilized a standard of "absolute certainty," or a standard requiring proof beyond a reasonable doubt, when determining whether he was mentally retarded.

9

The Third District clearly did not utilize a higher standard than the one prescribed by *Lott*. In this portion of its opinion, the Third District merely observes that Dr. Everington, Murphy's own expert, could not conclude with absolute certainty that Murphy was mentally retarded. It did not utilize an absolute certainty standard in conducting *its own* review of all evidence presented at Murphy's hearing. The Third District emphasized this portion of Dr. Everington's testimony to demonstrate that the defense's own expert could not state unequivocally that Murphy's intelligence was significantly subaverage. Thus, there is no merit to Murphy's assertion. Accordingly, Murphy's twenty-fourth ground for relief is not well-taken.[4]

### IV. Conclusion

Having decided that Murphy is not entitled to habeas relief, the Court now must determine whether to grant Murphy a COA for this claim. Whether to grant a COA is governed by 28 U.S.C. § 2253.[5] Thus, the Court must determine whether "'reasonable jurists would find [this Court's] assessment of the constitutional claim debatable or wrong?'" *Tennard v. Dretke*, 542 U.S. 274, 288 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

---

[4] Murphy numbered his *Atkins* claim as his twenty-fourth ground for relief in his amended petition because his initial petition asserted twenty-three grounds for relief.

[5] That statute states in relevant part:
> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
> > **(A)** the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court
> > \*\*\*
> **(2)** A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> 28 U.S.C. § 2253(c).

10

The Court finds that a COA should issue for this claim. Because the Sixth Circuit has not yet determined whether 28 U.S.C. § 2254(d)(1) or § 2254(d)(2) applies to State court factual findings regarding a petitioner's mental retardation, the Court finds this issue appropriate for appeal. Moreover, although this Court concluded that the State courts' factual findings were not unreasonable, a jurist of reason could find that the State courts did not give ample weight to certain testimony adduced at that hearing. Accordingly, the Court will issue a COA for this claim.

For the reasons stated in this Opinion, this Court finds that the claim asserted in Murphy's amended petition for a writ of habeas corpus under 28 U.S.C. §2254 is not well-taken. (Doc. No. 165.) Accordingly, Murphy's request for habeas corpus relief is denied. The petition is hereby dismissed.

The Court hereby issues a certificate of appealability pursuant to 28 U.S.C. §2253(c) as set forth in the above certificate of appealability analysis.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE